UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Arbitration Between<br><br>ABU DHABI INVESTMENT AUTHORITY,<br><br>       Petitioner,<br><br>    -against-<br><br>CITIGROUP INC.,<br><br>       Respondent. | No. 12-cv-00283 (GBD)<br><br>ECF Case<br><br>**Oral Argument Requested** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
CITIGROUP INC.'S CROSS-MOTION TO CONFIRM ARBITRATION AWARD**

                PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                1285 Avenue of the Americas
                New York, New York 10019-6064
                (212) 373-3000

                *Attorneys for Respondent Citigroup Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT.....................................................................................................................2

I.     ADIA HAS NOT REMOTELY DEMONSTRATED THAT THE TRIBUNAL'S APPLICATION OF NEW YORK LAW TO ADIA'S TORT CLAIMS CONSTITUTED MANIFEST DISREGARD OF THE LAW ........................................................................................................2

    A.     ADIA Has Not Shown That the Tribunal Manifestly Disregarded the ICDR's Choice-of-Law Rules, Which Governed this Case ..................2

    B.     Even If New York's Choice-of-Law Rules Had Governed, ADIA Has Not Shown That the Tribunal Manifestly Disregarded Them..............5

II.     ADIA HAS NOT SHOWN THAT THE DENIAL OF TWO DISCOVERY REQUESTS DEPRIVED IT OF A FUNDAMENTALLY FAIR HEARING ........................................................................................8

CONCLUSION.................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Areca, Inc.* v. *Oppenheimer & Co., Inc.*,
   960 F. Supp. 52 (S.D.N.Y. 1997) ............................................................................................8

*Duferco* v. *Tube City IMS, LLC*,
   No. 10 Civ. 7377(JSR), 2011 WL 666365 (S.D.N.Y. Feb. 4, 2011)............................8

*Finkelstein* v. *UBS Global Asset Mgmt. (US) Inc.*,
   No. 11-cv-00356 (GBD), 2011 WL 3586437 (S.D.N.Y. Aug. 9, 2011) .......................2

*Jock* v. *Sterling Jewelers, Inc.*,
   646 F.3d 113 (2d Cir. 2011) ....................................................................................................7

*JSC Surgutneftegaz* v. *President & Fellows of Harvard Coll.*,
   No. 04 Civ. 6069 (RCC), 2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005) .......................4

*Rai* v. *Barclays Capital Inc.*,
   456 F. App'x 8 (2d Cir. 2011) .................................................................................................8

*San Diego Cnty. Emps. Ret. Ass'n* v. *Maounis*,
   749 F. Supp. 2d 104 (S.D.N.Y. 2010) ....................................................................................6

*Schreiber* v. *Soc'y for Savings Bancorp, Inc.*,
   11 F.3d 217 (D.C. Cir. 1993) ................................................................................................10

*Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*,
   130 S. Ct. 1758 (2010) ..........................................................................................................2, 7

*United Paperworks Int'l Union, AFL-CIO* v. *Misco, Inc.*,
   484 U.S. 29 (1987) ....................................................................................................................8

*Wallace* v. *Buttar*,
   378 F.3d 182 (2d Cir. 2004) ....................................................................................................9

**OTHER AUTHORITIES**

II GARY B. BORN, INTERNATIONAL COMMERCIAL ARBITRATION (2009).........................3, 4

Martin Gusy, et al., *ICDR International Arbitration Rules, in* PRACTITIONER'S
   HANDBOOK ON INTERNATIONAL COMMERCIAL ARBITRATION (Frank-Bernd
   Weigand ed., 2d ed. 2009) .......................................................................................................5

NIGEL BLACKABY, ET AL., REDERN AND HUNTER ON INTERNATIONAL
   ARBITRATION (2009)................................................................................................................4

**PRELIMINARY STATEMENT**

ADIA's memorandum fails to confront the numerous fatal deficiencies in its petition or to establish any viable basis for vacatur of the Tribunal's duly issued award.

First, ADIA inexplicably ignores that the Tribunal could not have manifestly disregarded New York's choice-of-law rules because the ICDR's rules, not New York law, controlled the choice-of-law determination. ADIA thus cannot possibly show that the Tribunal consciously defied any controlling law because the Tribunal expressly applied the substantive law it deemed "appropriate," precisely as it was obligated to do under the ICDR rules to which ADIA and Citigroup agreed to be bound. Moreover, even if, as ADIA now incorrectly claims, New York's choice-of-law rules had governed, ADIA's petition to vacate the arbitration award would still fail because the Tribunal explicitly considered New York's choice-of-law analysis—among several other factors—and concluded that it *also* favored application of New York substantive law. ADIA's challenge to the Tribunal's choice-of-law determination is thus nothing more than a procedurally improper and otherwise unpersuasive attempt to re-litigate the merits of the Tribunal's analysis.

Second, ADIA's attempt to transform the denial of two of its more than sixty document requests into a deprivation of due process is without support. Vacatur based upon a denial of due process ordinarily requires that the arbitrators engaged in bad faith or deliberate misconduct, yet ADIA has not even suggested that the Tribunal did so. Nor does ADIA identify any grievous procedural injury. Instead, it merely speculates that it might have obtained "better" evidence regarding Citigroup's capital needs than was contained in the hundreds of thousands of pages of internal Citigroup documents to which ADIA was granted access or in the sworn testimony of Citigroup's current and former executives, at least twelve of whom ADIA examined

during its case. But there is no precedent for vacating an arbitration award based on a party's mere disagreement with an arbitral panel's denial of a few document requests. ADIA has cited no reason to break new ground here.

## ARGUMENT

**I.  ADIA HAS NOT REMOTELY DEMONSTRATED THAT THE TRIBUNAL'S APPLICATION OF NEW YORK LAW TO ADIA'S TORT CLAIMS CONSTITUTED MANIFEST DISREGARD OF THE LAW**

ADIA improperly seeks to re-litigate the merits of the Tribunal's choice-of-law analysis. To the extent that manifest disregard of the law remains a viable basis for disturbing an arbitration award, however, it permits vacatur "only when a party clearly demonstrates that the panel intentionally defied the law." *Finkelstein* v. *UBS Global Asset Mgmt. (US) Inc.*, No. 11-cv-00356 (GBD), 2011 WL 3586437, at *5 (S.D.N.Y. Aug. 9, 2011) (Daniels, J.). Arbitration awards "are not [to be] vacated because of a simple error in law or a failure by the arbitrators to understand or apply it," *id.* at *4 (internal quotation marks omitted), or because "the panel committed . . . even a serious error," *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1767 (2010). ADIA has not come close to demonstrating that the Tribunal's decision to apply New York substantive law to ADIA's common-law tort claims was reached in deliberate defiance of controlling law that the Tribunal recognized as compelling a different result.[1]

**A.  ADIA Has Not Shown That the Tribunal Manifestly Disregarded the ICDR's Choice-of-Law Rules, Which Governed this Case**

The Tribunal could not have manifestly disregarded New York's choice-of-law

---

[1] ADIA's suggestion that this Court should vacate the award because "several *ad hoc* committees of the International Centre for Settlement of Investment Disputes" ("ICSID") have recognized that "failure to apply the proper law" can "result in annulment" merits no weight. (Opp. at 15-16.) The ICSID awards that ADIA cites involve review, pursuant to Article 52 of the ICSID rules, of an arbitral award by *another arbitral panel*. ICSID rules have no application to this arbitration, which was conducted pursuant to the Rules of the ICDR. Moreover, the ICSID decisions that ADIA cites provide no basis for vacatur of an arbitration award under federal law.

rules here for the simple reason that those rules did not control the choice-of-law analysis. As the Tribunal recognized, the parties' Investment Agreement required the application of the ICDR's choice-of-law rule. (*See* Decl. of Daniel J. Toal, Apr. 3, 2012, Ex. M at 1-3.)[2] ADIA conceded this point before the Tribunal (*see* Ex. Y at 1), but does not even acknowledge—let alone attempt to explain—that dispositive admission here. In all events, as even the treatise upon which ADIA relies makes clear, the question of which choice-of-law regime controls is definitively answered where, as here, "the parties have agreed to institutional rules," such as Article 28 of the ICDR, "prescribing a choice of law rule." II GARY B. BORN, INTERNATIONAL COMMERCIAL ARBITRATION 2118-19 (2009) ("Born"). Moreover, ADIA presents absolutely no evidence that the Tribunal believed that any other choice-of-law rule took precedence over the ICDR rule to which the parties agreed, but decided to apply the ICDR standard nonetheless.[3] That failure alone forecloses ADIA's manifest disregard challenge.

Rather than confront this fatal flaw, ADIA contents itself with attacking straw men. It inaccurately contends that "the Tribunal expressly determined that New York choice of law rules controlled their analysis." (Opp. at 5.) These assertions, for which ADIA tellingly provides no citation, are demonstrably false. The Tribunal never suggested that New York's choice-of-law rules controlled the analysis, recognizing instead that the parties' Investment

---

[2] Citations of the form "Ex. __" refer to exhibits to this declaration, submitted with Citigroup's Memorandum of Law in Opposition to Petition to Vacate and Cross-Motion to Confirm Arbitration Award (dkt. # 29).

[3] ADIA's assertion that it did not "waive" application of New York's choice-of-law rules or Abu Dhabi's substantive law misses the point. (Opp. at 6-8.) ADIA's unwavering reliance on New York's substantive law for the first year of the arbitration is relevant not because it effected a "waiver" but because it confirms that, prior to filing this petition, not even ADIA believed that the choice-of-law analysis compelled application of Abu Dhabi law. ADIA cannot now credibly assert that the choice-of-law analysis *clearly* required application of Abu Dhabi law when its own capable attorneys never suggested that the analysis was clear-cut—they contended only that Abu Dhabi law could "arguably" apply and that it would be "sensible" to "look to New York's choice of law precedents." (Cross-Mot. at 21.)

Agreement and the ICDR Rules incorporated therein required it to determine the "appropriate" substantive law. (*See* Ex. M at 5 (recognizing "our charter under Art. 28(1) of the ICDR Rules").)

ADIA also mistakenly contends that the Tribunal was required to apply New York's choice-of-law rules because the arbitration occurred in New York. That argument flies in the face of the clear text of the Investment Agreement, in which the parties chose ICDR rules as the governing procedural standard for the arbitration, not New York law. ADIA offers no support—and none exists—for the proposition that arbitrators manifestly disregard the law when they apply the procedural rules mandated by the arbitration agreement rather than those of the jurisdiction in which the arbitration took place. Indeed, such a rule would make no sense in light of the emphasis in arbitration on the terms of the parties' contract. *See, e.g.*, Born at 474 ("Requiring that the law of the arbitral seat govern . . . regardless of the parties' intentions, runs squarely counter to principles of party autonomy—which affirm the parties' freedom to select both the arbitral seat, the arbitral procedure and the law governing their arbitration agreement."). And even ADIA concedes that the supposed requirement that arbitrators apply the choice-of-law rules of the arbitral location is, at best, a mere "presumpt[ion]." (Opp. at 8.)[4] Where, as here, the parties have selected alternative choice-of-law rules, that presumption has no application. *See, e.g.*, Born at 2118-19. ADIA's assertion that Article 28 does not "displace" New York's choice-of-law rules is similarly baseless. It is the intent of the parties to apply Article 28, as

---

[4] *See JSC Surgutneftegaz* v. *President & Fellows of Harvard Coll.*, No. 04 Civ. 6069 (RCC), 2005 WL 1863676, at *7 (S.D.N.Y. Aug. 3, 2005), *aff'd*, 167 F. App'x 266 (2d Cir. 2006). ADIA also neglects to mention that leading commentaries on international arbitration, including the Born treatise that ADIA cites, recognize that this presumption has largely been abandoned in modern arbitration. *See, e.g.*, Born at 2123 ("Contemporary commentators, courts, arbitrators, arbitral institutions and other authorities have rejected the historical 'arbitral seat' rule in favor of less mechanical approaches."); Nigel Blackaby, et al., Redern and Hunter on International Arbitration § 3.218 (2009) ("almost total abandonment"). Instead, ADIA cites only a single article from 1986 as purported support for applying the law of the arbitral location.

memorialized in the Investment Agreement, that "displaced" any choice-of-law rule that otherwise might have applied.

Finally, ADIA appears to argue—for the first time in its Opposition—that the Tribunal manifestly disregarded the "appropriateness" analysis by "not even consider[ing] Abu Dhabi choice of law rules." (Opp. at 16-17.) But it offers no evidence that the Tribunal believed the "appropriateness" analysis required it to consider those rules yet ignored them.[5] To the contrary, the ICDR's choice-of-law "rule" vested the Tribunal with broad discretion to apply whatever laws "it determine[d] to be appropriate." (*See* Ex. N at Art. 28(1).) The Tribunal therefore chose an "appropriate" substantive law by considering numerous factors—including norms of international arbitration, New York choice-of-law authorities, and the parties' "course of dealing"—each of which the Tribunal concluded, in a unanimous and well-reasoned decision, compelled application of New York's substantive law. (Ex. M at 3-5, 7; *see* Cross-Mot. at 8-9.) Given its highly discretionary mandate, the Tribunal's approach was eminently reasonable, and certainly not in manifest disregard of any governing law.

### B. Even If New York's Choice-of-Law Rules Had Governed, ADIA Has Not Shown That the Tribunal Manifestly Disregarded Them

Even if New York's interest analysis had governed the choice-of-law question here, ADIA would be unable to establish manifest disregard of the law. It provides no basis, and there is none, for concluding that the Tribunal: (i) considered New York's choice-of-law principles to control and (ii) believed those principles required application of Abu Dhabi law, but (iii) knowingly applied a different body of substantive law. (*See* Cross-Mot. at 23-24.) Absent such defiant conduct by the Tribunal, there can be no vacatur for manifest disregard.

---

[5] *See* Martin Gusy, et al., *ICDR International Arbitration Rules*, in PRACTITIONER'S HANDBOOK ON INTERNATIONAL COMMERCIAL ARBITRATION, ¶ 17.250 (Frank-Bernd Weigand ed., 2d ed. 2009) ("ICDR rules do not specify what criteria the tribunal should apply to decide what law is 'appropriate.'").

Lacking evidence that the Tribunal defied the clear result of the interest analysis, ADIA simply reasons backward from its own conclusion: It argues that, because Abu Dhabi had the greater interest in application of its law—a proposition with which the Tribunal expressly disagreed (Ex. M at 4)—the Tribunal *must* have manifestly disregarded New York's interest analysis. (Opp. at 11.) That argument presupposes that New York's interest analysis somehow required the Tribunal to conclude that Abu Dhabi's interests outweighed New York's. But the fact-bound and discretionary nature of the interest analysis makes that argument entirely unpersuasive,[6] and ADIA cites *no* case to support its assertion that New York's interest analysis mandates the conclusion that Abu Dhabi's interests outweighed New York's. Indeed, ADIA primarily criticizes the Tribunal for ignoring the purported requirement to apply the law of the state where the supposed harm occurred. (*See* Opp. at 10-11.) But there is no such requirement. Even the cases ADIA cites reinforce what Citigroup previously demonstrated (*see* Cross-Mot. at 23 n.13): A plaintiff's "location is not a dispositive factor, and other occurrences and contacts within each jurisdiction that relate to the conflict of law are appropriately considered." *San Diego Cnty. Emps. Ret. Ass'n* v. *Maounis*, 749 F. Supp. 2d 104, 125 (S.D.N.Y. 2010) (internal quotation marks omitted) (applying Connecticut law notwithstanding that the alleged injury was sustained in California). And particularly where, as here, the tort in question is intended to regulate conduct, many courts have recognized that the interests of the jurisdiction in which the

---

[6] ADIA's assertion that "New York's choice of law rules are clear" is beside the point. (Opp. at 10.) Even if it were clear that New York's choice-of-law rules require an interest analysis, the law is anything but "clear" about how to conduct such an analysis. As Citigroup demonstrated in its prior briefing, the "interest analysis" is a fact-intensive test that requires consideration of the entire record and grants the fact-finder considerable discretion in each case. (*See* Cross-Mot. at 23 n.13.)

alleged tort was committed will predominate over the jurisdiction in which the alleged harm was suffered. (*See* Cross-Mot. at 23 n.13, 25 n.14.)[7]

The Tribunal had ample support in fact and law for its determination that New York's interests predominated over those of Abu Dhabi. ADIA does not dispute that the alleged misrepresentations were made in New York; that a "substantial majority" of the activities "leading up to the signing of the Investment Agreement" and relating to the alleged misconduct occurred in New York; and that both parties hired New York counsel for advice about New York law. (Ex. M at 4.) On that record, the Tribunal reasonably relied upon several New York cases recognizing New York's significant interest in "regulating New-York-based conduct of financial institutions" and "setting legal standards for the myriad global financial institutions" within its borders. (*Id.* at 4.) ADIA does not address those cases, let alone explain how the Tribunal could have manifestly disregarded New York law given its express reliance upon a significant body of New York law that supported its decision.[8] *See, e.g.*, *Jock* v. *Sterling Jewelers, Inc.*, 646 F.3d 113, 124 (2d Cir. 2011) (court does not decide "whether the arbitrator 'got it right'").

ADIA's claim that the Tribunal manifestly disregarded New York's choice-of-law rules is nothing more than an improper and unavailing attempt to show that the Tribunal reached the wrong result under New York law. But even if the Tribunal had erred—and it did not—it is axiomatic that even a serious error by the arbitrators is not grounds for vacatur for manifest disregard. *See, e.g.*, *Stolt-Nielsen*, 130 S. Ct. at 1767; *Jock*, 646 F.3d at 124. ADIA thus is not

---

[7] ADIA's reliance upon *Stolt-Nielsen* is also off the mark. That case addressed whether arbitrators could impose class arbitration proceedings on a party notwithstanding that the arbitration agreement was "silent" about class arbitration. 130 S. Ct. at 1768. Here, the Investment Agreement is not "silent" about choice-of-law rules, but instead explicitly states that the arbitration will be governed by ICDR rules.

[8] ADIA does not even cite two of the cases upon which the Tribunal relied, *Amusement Industries* and *Chase Manhattan Bank*, and it cites the third, *Cromer*, only in a footnote and for a proposition the Tribunal did not address. (*Compare* Ex. M, at 4 *with* Opp. at 11-13.)

entitled to re-litigate in this Court the merits of its argument, duly considered and rejected by the Tribunal, that Abu Dhabi's interests outweighed New York's.

## II. ADIA HAS NOT SHOWN THAT THE DENIAL OF TWO DISCOVERY REQUESTS DEPRIVED IT OF A FUNDAMENTALLY FAIR HEARING

Despite having failed to find even a single federal case in which an arbitral award was vacated on the basis that the arbitrators denied a document request, ADIA continues to assert that the denial of two of its sixty document requests deprived it of a fundamentally fair hearing.[9] ADIA's claim has no basis in either law or logic, and it should be summarily rejected.

ADIA has utterly failed to establish that the Tribunal's discovery rulings were made "in bad faith" or were "so gross as to amount to affirmative misconduct." *United Paperworks Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 40 (1987); *see Duferco* v. *Tube City IMS, LLC*, No. 10 Civ. 7377(JSR), 2011 WL 666365, at *3 (S.D.N.Y. Feb. 4, 2011), *aff'd*, 446 F. App'x 28 (2d Cir. 2012). Absent such egregious conduct, there can be no vacatur for lack of fundamental fairness. *See, e.g.*, *Rai* v. *Barclays Capital Inc.*, 456 F. App'x 8, 9 (2d Cir. 2011).

ADIA has not even suggested that the Tribunal engaged in such deliberate misconduct when it denied ADIA's discovery requests. Nor could it. ADIA does not dispute that, far from acting egregiously, the Tribunal permitted extensive briefing concerning ADIA's motions to compel production of documents relating to the Bowen Request and the privileged bank regulatory materials, and ruled on those motions after considering the parties' submissions and arguments. The Tribunal, which took pains to afford ADIA a scope of discovery far beyond

---

[9] Given the Tribunal's "broad discretion to determine whether to hear evidence," *Areca, Inc.* v. *Oppenheimer & Co., Inc.*, 960 F. Supp. 52, 55 (S.D.N.Y. 1997), it is not surprising that ADIA failed to find any such authority. Instead, ADIA again relies on two cases it cited in its petition, *Iran Aircraft Industries* and *Tempo Shain*. As Citigroup has previously explained, neither case advances ADIA's cause. (Cross-Mot. at 15 n.9.) Remarkably, ADIA has not even tried to explain how the circumstances of these cases have any application here.

that typical of international arbitration (Cross-Mot. at 14), was certainly not required to indulge every single one of ADIA's discovery-related impulses. In any event, ADIA's failure to allege, much less prove, bad faith or misconduct by the Tribunal is fatal to its petition.

In addition, as to the Bowen Request, ADIA does not deny that it chose not to call Bowen or question any of Citigroup's witnesses about his email despite having ample time and permission to do so. Instead, ADIA asks this Court to excuse that strategic choice by blaming the Tribunal for denying it "the documents necessary to contradict any self-serving testimony [Citigroup's witnesses] might have given." (Opp. at 20 n.6.) Not surprisingly, ADIA cites no support for its apparent belief that due process requires that a party have access to *every* document it would like before cross-examining a witness. Such a "rule" would transform every discovery dispute into an issue of constitutional significance.

Rather than offer authority to support its position, ADIA devotes most of its argument on this point to complaints about a handful of purported "inconsistencies" in the testimony of Citigroup's witnesses. There were no inconsistencies here, but even if there had been, they would be irrelevant to whether the Tribunal denied ADIA fundamental fairness in denying two of ADIA's document requests.[10] The bottom line is that ADIA's capable counsel had the opportunity to ask all of the questions it wanted of whichever witnesses it called, and it had an arsenal of 550,000 pages of documents with which to cross-examine them. These circumstances do not come close to denying ADIA due process.

As to the bank examination materials, ADIA recites the same contentions made in its petition, which are no more persuasive now than they were then. There is no merit to the

---

[10] At best, ADIA's discussion of these supposed inconsistencies is a veiled plea for this Court to reconsider the Tribunal's credibility determinations. It is well-settled law, however, that a "court may not conduct a reassessment of the evidentiary record" from an arbitral hearing. *Wallace* v. *Buttar*, 378 F.3d 182, 193 (2d Cir. 2004).

notion that vacatur is warranted because the Tribunal did not examine the materials *in camera* or hold a hearing on the scope of the privilege. Nor was the Tribunal required to order the production of redacted versions of the materials, and ADIA cites no support for vacatur on that ground.[11] Indeed, the Tribunal gave ADIA exactly what ADIA now complains it was denied by explicitly noting that it expected Citigroup to produce redacted documents where applicable. (Ex. C at 3.) In the end, the Tribunal considered ADIA's four briefs on this issue, letters from federal banking regulators, and Citigroup's privilege log, and it denied ADIA's request in light of "judicial standards relating to the bank examination privilege." (Cross-Mot. at 16 (quoting Ex. C at 2-3).) ADIA's mere disagreement with the Tribunal's conclusion, which was fully consonant with the views of Citigroup's bank examiners, is no basis for disturbing the Award.

ADIA's complaints about discovery amount to mere speculation about what it "could have proven" had the Tribunal compelled production of the "better" or "uniquely probative" evidence that it imagines its requests might have unearthed. (Opp. at 19, 20, 22, 23.) But no legal authority supports vacatur of an arbitration award based on the losing party's wishful thinking about what additional discovery would have shown.

## CONCLUSION

For the foregoing reasons, and for the reasons in Citigroup's Cross-Motion, Citigroup respectfully requests that the Court: (1) deny ADIA's petition to vacate the Award; (2) grant Citigroup's motion to confirm the Award; (3) direct that judgment be entered upon that Award; and (4) grant such further relief as the Court deems just and proper.

---

[11] *Schreiber* v. *Society for Savings Bancorp, Inc.*, 11 F.3d 217 (D.C. Cir. 1993), is not such a case because it did not concern an arbitration ruling, let alone the standards for vacatur, and, in all events, the court there explicitly said that it was "*not* prepared to say that an *in camera* inspection is always necessary in order for the district court to satisfy itself about the factual nature of a bank regulatory document." *Id.* at 221 (first emphasis added). ADIA's reliance on *Schreiber* is therefore unavailing.

Dated: July 18, 2012
New York, New York

                            PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                            By: /s/ Leslie Gordon Fagen
                                 Brad S. Karp
                                 Leslie Gordon Fagen
                                 Jay Cohen
                                 Daniel J. Toal

                            1285 Avenue of the Americas
                            New York, New York 10019-6064
                            Tel. (212) 373-3000
                            Fax (212) 757-3980
                            bkarp@paulweiss.com
                            lfagen@paulweiss.com
                            jaycohen@paulweiss.com
                            dtoal@paulweiss.com

                            *Attorneys for Respondent Citigroup Inc.*