```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                      :
ABU DHABI INVESTMENT AUTHORITY,       :
                                      :
                      Petitioner,     :
                                      :      MEMORANDUM DECISION
        -against-                     :          AND ORDER
                                      :
                                      :         12 Civ. 283 (GBD)
CITIGROUP, Inc.,                      :
                                      :
                      Respondent.     :
                                      :
                                      :
                                      :
------------------------------------- x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 04 2013

GEORGE B. DANIELS, United States District Judge:

Petitioner Abu Dhabi Investment Authority ("ADIA") brings this petition to vacate an arbitration award rendered in favor of Respondent, Citigroup, Inc. ("Citi") pursuant to an arbitration agreement. ADIA contends that the award must be set aside because (1) the arbitration tribunal's decision to apply New York law to ADIA's claims for common law fraud and negligent misrepresentation was made in manifest disregard of the law in violation of the Federal Arbitration Act ("FAA"), and (2) that certain evidentiary rulings by the tribunal left it unable to present its case, in violation of both the FAA as well as The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention"). Citi opposes ADIA's motion to vacate. Citi moves this Court to confirm the award. ADIA's Motion to Vacate is DENIED. Citi's Cross-Motion to Confirm is GRANTED. The award is confirmed.

1

**Background**

The relevant facts are largely undisputed. In November 2007, ADIA made a $7.5 billion investment in Citi. The investment agreement contained an arbitration clause, whereby ADIA and Citi agreed to submit any dispute that arose out of the transaction to binding arbitration. After irresolvable differences arose, ADIA filed a Statement of Claim with the agreed upon arbitration organization, the International Centre for Dispute Resolution of the American Arbitration Association ("ICDR") in December 2009. ADIA asserted claims against Citi for common law and securities fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing. ADIA demanded either rescission of the contract and the return of its investment, or money damages of over four billion U.S. dollars.

Each party nominated one arbitrator, and these nominees jointly selected the third, neutral member of the tribunal, who was designated its chair. The tribunal was deemed fully constituted on May 3, 2010. All three arbitrators were U.S.-based attorneys. After extensive discovery and a 16-day hearing in New York in which it heard 24 witnesses and received 5,988 exhibits, the tribunal gave an award for Citi and against ADIA. ADIA then brought this petition to vacate the award. It cited three tribunal decisions that it contends were made in manifest disregard of the law, and which left it unable to present its case. ADIA contends that the tribunal's New York choice of law decision on the common law tort claims, and two evidentiary rulings warrant vacatur of the award.

<u>The Choice of Law Decision</u>

On November 18, 2010, ADIA informed Citi by letter that the civil law of Abu Dhabi

"could arguably control certain issues relating to ADIA's tort claims," (Letter from Sascha Rand, Toal, Ex. Z, at 7), and moved the tribunal on December 1, 2010 to apply Abu Dhabi's civil law to its claims for common law fraud and negligent misrepresentation. The investment agreement explicitly stated that New York law would govern breach of contract claims, but did not contain a choice of law provision specifically governing the substantive law applicable to non-contract, common law tort claims.[1] To determine which substantive law to apply, ADIA "agree[d] with Citi that the choice-of-law framework in this arbitration is supplied by the two-step analysis of Article 28(1) of the ICDR Rules," which calls for the tribunal to determine the "appropriate" law to apply. Claimant's Reply in Support of Application of Abu Dhabi Law to Claimant's Tort Claims ("Claimant's Reply"), Toal Ex. Y at 1. Citi opposed ADIA's motion to apply the civil law of Abu Dhabi, and argued that New York substantive law ought to apply.

The tribunal concluded that New York substantive law would govern all claims, including ADIA's claims for common law fraud and negligent misrepresentation. The tribunal issued a seven page, single spaced, statement of reasons explaining its decision on December 31, 2010. The tribunal found that the parties' contract had not designated the substantive law that was to apply to these tort claims in any of their agreements, and that the choice of law process was indeed governed by Article 28(1). It then stated that in order to determine which law was "appropriate," it was going to apply two frameworks: "choice of law authorities in international

---

[1] The choice of law clause of the Investment Agreement states:

> Governing Law; Submission to Jurisdiction, Etc. The Transaction Documents will be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within such State. In the case of any permitted court proceedings, including any request for Interim Measures, each of the parties hereto agrees (i) to submit to the personal jurisdiction of the State or Federal courts in the Borough of Manhattan, the City of New York, (ii) that exclusive jurisdiction and venue shall lie in the State or Federal courts in the State of New York, and (iii) that notice may be served upon such party at the address and in the manner set forth for such party in Section 5.10. The parties may seek to enforce an arbitral award in any court in which jurisdiction may be had.

Investment Agreement, Toal Ex. A, ¶ 5.7

3

arbitration practice," and New York's "interest analysis." Order on Governing Law: Statement of Reasons ("Statement of Reasons"), Toal Ex. M, at 1-3.

The tribunal first addressed choice of law principles from international arbitration practice. It found that the following relevant factors, gleaned from choice of law principles as articulated in two treatises on international arbitration, supported the application of New York law: the contract was denominated in U.S. dollars; the contract was performed in New York; applying New York law furthered the internationally recognized goals of predictability and certainty in international commerce; and doing so subjected all issues arising from the contract to a single legal regime. Id. at 3.

Turning next to the interest analysis, the tribunal recognized that both New York and Abu Dhabi had "legitimate interests and concerns relating to ADIA's fraud and negligent misrepresentation claims," but ultimately concluded that New York's interest was greater. Id. at 3. The tribunal recognized that the plaintiff is based in Abu Dhabi and that its injury allegedly took place there, but found that the "overwhelming center of the events giving rise to the claims is New York." Id. It found that the alleged misrepresentations were made in New York; that the "substantial majority" of the activities leading up to the signing of the agreement took place in New York; that the parties relied on the advice of New York counsel when drafting the investment agreement, who rendered opinions on the agreement pursuant to the laws of New York (and not Abu Dhabi); that New York had a "significant interest" in regulating the conduct of New York-based financial institutions (such as Citi); and that the choice of New York law "appropriately reflects the reasonable expectations of Parties whose cumulative actions indicate a reliance on that jurisdiction's law to govern their conduct . . ." Id. at 4.

4

Consistent with its attempt to validate the parties' reasonable expectations, the tribunal devoted several pages of its decision to a discussion of the parties' course of dealing. It did not find any evidence during the negotiations leading up to the agreement, in the agreement itself, or in the history of the arbitration prior to ADIA's November 18, 2010 letter (which was sent nearly a year into the arbitration) that either party ever contemplated that the civil law of Abu Dhabi might apply. In its statement of claim, ADIA framed its claims as common law fraud and negligent misrepresentation, notwithstanding the fact that Abu Dhabi is a civil law jurisdiction that does not recognize common law claims. Id. The law of New York was the only law that the parties designated as applicable to any anticipated dispute.

The Evidentiary Decisions

The parties engaged in substantial discovery prior to the ultimate hearing. Citigroup produced over 550,000 pages of documents from thirty-two custodians, including some of Citi's highest executives, such as its then Chief Executive Officer, Chief Financial Officer, and several other officers and directors. Citi's document production largely related to the valuation of its securitized assets and its near-term capital needs. At one point, the tribunal itself noted that the scope of discover that it allowed went "beyond what [the tribunal understood] generally to be the international norm as set out, for example, in the ICDR guidelines." November 7, 2010 Order, Toal Ex. C at 2, n.1.

ADIA argues that the tribunal's denial of two of its almost sixty document requests (see August 12, 2010 Order, Toal Ex. D) left it unable to present its case and warrants vacating the award. ADIA's discovery request No. 35 sought all documents relating the "significant but possibly unrecognized financial losses" referenced in an email (that ADIA had in its possession)

that was sent by Richard Bowen, a manager in Citi's real estate lending group, to high level Citi executives.[2] Bowen Email, Spray Ex. 14 at 1. ADIA argued that in the email, Bowen alerted top Citi officials, including CFO Gary Crittenden, of "breakdowns of internal controls and resulting significant but possibly unrecognized financial losses" within Citi. Id. Although the tribunal did not explicitly state its reasons for denying this request, it allowed both sides the opportunity to brief the issue and several hours of oral argument.

The other document request that the tribunal denied pertained to production of Citi's bank examiner reports.[3] ADIA requested these reports not in its initial document request of July 23, 2010, but in a supplemental document request dated October 29, 2010. In a three page, single spaced, decision, the tribunal denied ADIA's request, finding it untimely. November 7, 2010 Order, Toal Ex. C at 2. The tribunal continued that even assuming the request was timely, it still would have denied it because of the schedule demands of the arbitration, the extensive scope of the discovery already allowed, the refusal of the FRB and OCC to waive their bank regulator privilege, and because in its best judgment, the information contained in the bank examiner reports would have been cumulative. Id. at 2-3.

### Legal Standard

This petition to vacate the arbitration award is governed by two sources of law. The New York Convention governs the recognition and enforcement of arbitral awards "not considered as domestic awards in the State where their recognition and enforcement are sought."

---

[2] Document request No. 35 demanded "All Documents from October 15, 2007 to January 31, 2008, referring to, commenting on, or describing the 'significant but possibly unrecognized financial losses' referenced in Mr. Richard Bowen's email to Mr. Rubin dated November 3, 2007 (a copy of which is attached hereto as Exhibit 2), including any analysis prepared by or considered by Mr. Bowen that supported these assertions." August 12, 2010 Order, Toal Ex. D at 6.

[3] These reports were prepared by the Federal Reserve ("FRB"), Federal Deposit Insurance Corporation ("FDIC"), and the Office of the Comptroller of the Currency ("OCC"), among other agencies, in the course of their routine audit of Citibank. See generally, In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577 (E.D.N.Y. 1979).

Convention, Art. I. The FAA requires enforcement of the Convention, except in instances concerning "a relationship which is entirely between citizens of the United States." 9 U.S.C. §§ 201, 202. The Convention applies here because ADIA is a public investment fund established under the laws of the Emirate of Abu Dhabi, and Citi is a Delaware corporation with its principal place of business in New York.

A district court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention [in Article V]." Id. § 207. ADIA brings this petition under Article V(1)(b), which permits a court to refuse an award if the party against whom the award was invoked was "unable to present his case . . . ." Convention, Art. V(1)(b). The Second Circuit has interpreted this ground as being akin to a violation of due process, requiring an "opportunity to be heard at a meaningful time and in a meaningful manner." Iran Aircraft Industries v. Avco Corp., 980 F.2d 141, 146 (2d. Cir. 1992).[4]

The second source of law is the FAA itself. The FAA standards for recognition and enforcement of arbitration awards also apply to disputes that fall under the Convention to the extent that they are "not in conflict" with those of the Convention. 9 U.S.C. § 208; Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir. 2007). Neither party contends that the Convention's standards for vacatur conflict with those of the FAA here. They do not. Courts routinely apply both the Convention and the FAA to motions to vacate or confirm arbitral awards that were rendered in the United States.[5] See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us,

---

[4] Although there are few Second Circuit cases that discuss the specific process due, one Fifth Circuit court has held that in order for an arbitration to be fundamentally fair, it must meet "the minimal requirements of fairness— adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator. . . . The right to due process does not include the complete set of procedural rights guaranteed by the Federal Rules of Civil Procedure. Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negra, 364 F.3d 274, 298-99 (5th Cir. 2004) (internal quotations and citations omitted).

[5] The most common instance in which courts deem the Convention and FAA in conflict are instances where the arbitral award was given in or under the laws of a foreign jurisdiction, which is not applicable here. See Yusuf Ahmed, 126 F.3d at 20 (collecting cases).

Inc., 126 F.3d 15, 19-20 (2d Cir. 1997) (noting that the Convention and the FAA work together and have "overlapping coverage"); accord Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., L.L.C., 450 F.3d 100, 103 n.1 (2d Cir. 2006).

A court may vacate an award pursuant to one of the enumerated grounds for vacatur in the FAA. Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 586 (2008). ADIA brings this petition pursuant to § 10(a)(3) of the FAA. Section § 10(a)(3) states, in pertinent part, that this court may vacate the award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). ADIA claims that the tribunal's errors were so severe that its choice of law decision and denial of two document requests amount to a manifest disregard of the law, and require vacatur.[6]

A party seeking to vacate an award under the FAA faces a "high hurdle." Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp., 130 S. Ct. 1758, 1766 (2010). Awards are vacated on grounds of manifest disregard only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator [] is apparent," T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) (quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003)). It is not enough for the petitioner to show that the panel committed an error of law—even a serious one. Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000). Misunderstandings of law or arguable

---

[6] Courts in this Circuit have long used "manifest disregard" as the standard for vacating arbitral awards under § 10(a). See, e.g., T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339-40 (2d Cir. 2010). While the Supreme Court has explicitly not decided whether this standard survived its decision in Hall (because "manifest disregard" is not mentioned in the statute, see Stolt-Nielsen, 130 S. Ct. at 1768, n.3 ("We do not decide whether 'manifest disregard' survives our decision in Hall. . . ") the Second Circuit continues to employ it. See STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) L.L.C., 648 F.3d 68, 78 (2d Cir. 2011) (assuming that it survived Hall); T.Co, 592 F.3d at 340 (positing that Hall reconceptualized manifest disregard "as a judicial gloss on the specific grounds for vacatur." (quoting Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94 (2d Cir. 2008, rev'd on other grounds, 130 S.Ct. 1758 (2010))).

8

differences in a law's application will not suffice. T.Co, 592 F.3d at 339. In order to meet this standard, there must be "a barely colorable justification for the outcome reached," or the petitioner must clearly demonstrate that the arbitrator "intentionally defied the law." Id. (quoting Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004)); see also STMicroelectronics, 648 F.3d at 78.

There are three components to the manifest disregard standard. T.Co, 592 F.3d at 339. First, this Court must "consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators. An arbitrator obviously cannot be said to disregard a law that is unclear or not clearly applicable. Thus, misapplication of an ambiguous law does not constitute manifest disregard." Id. Second, this Court must find that the law was improperly applied, and that this improper application led to an erroneous outcome. Id. The third element is whether the arbitrators actually knew about the law and then intentionally disregarded it. Id.

**The Tribunal's Application of New York Law Did not Violate the FAA**

ADIA argues that the tribunal's refusal to apply the civil law of Abu Dhabi to its common law fraud and negligent misrepresentation claims constituted manifest disregard of the law.[7] It argues that the tribunal was required to apply the New York State choice of law analysis,

---

[7] Although ADIA nominally claims that the tribunal's refusal to apply Abu Dhabi law violated the Convention by preventing ADIA from being able to present its case, ADIA appears to abandon this argument. The only section of its brief that purports to raise this argument, entitled "The Tribunal Manifestly Disregarded Well-Established Choice-of-Law Principles In Denying ADIA's Motion To Apply Abu Dhabi Law and Thereby Denied ADIA the Opportunity To Present Its Case In a Meaningful Way," does not offer as much of a sentence of argument as to how the tribunal's purportedly erroneous choice of law decision violated the Convention. See ADIA Br. at 18-20. ADIA does not devote any of the fifteen pages in its reply brief that discuss this choice of law error to this argument. See ADIA Reply Br. at 4-19. The tribunal set a briefing schedule on this issue and provided the parties with a 7-page, single-spaced statement of reasons on December 31, 2010. It appears beyond reproach (as ADIA's abandonment implicitly recognizes) that ADIA had ample time and opportunity to argue this issue before the tribunal, and that the tribunal met its basic obligations of fairness.

and that had it properly applied such analysis, the only conclusion it could have reached was that Abu Dhabi civil law applied. It argues that while it might have been unable to meet the New York standards for fraud and negligent misrepresentation, it would have been able to meet the standards under the civil law of Abu Dhabi, which are lower.[8] Citi argues that the tribunal was bound to and properly did apply the choice of law framework supplied by Article 28(1) the ICDR rules, which required it apply the "appropriate" substantive law.

A careful review of the tribunal's actions and decisions indicates that it did not act with manifest disregard of the law. While the investment agreement specified that the transaction documents would be governed by and construed in accordance with New York law, it did not specify which set of laws would govern other common law claims that did not arise directly from the agreement. Investment Agreement, Toal Ex. A, ¶ 5.7. The parties agreed that any dispute that they could not resolve would be decided through arbitration administered by the ICDR in accordance with its International Arbitration Rules. Id. ¶ 5.6(a). Article 28(1) of the International Arbitration Rules states that should the parties fail to designate a set of substantive laws for the tribunal to apply in their agreement, "the tribunal shall apply such law(s) or rules of law as it determines to be appropriate." International Arbitration Rules, Toal Ex. N, Art. 28(1).

In briefing the choice of law issue for the tribunal, ADIA stated that it "agrees with Citi that the choice-of-law framework in this arbitration is supplied by the two-step analysis of Article 28(1) of the ICDR Rules: (1) Have the parties designated a jurisdiction's substantive law as applicable to the dispute?; (2) Failing such a designation by the parties, which such law(s) are appropriate?" Claimant's Reply, Toal Ex. Y, at 1 (internal quotations omitted). The tribunal did

---

[8] ADIA contends that "The Civil Code provides remedies for misrepresentations (without distinguishing between intentional, negligent or reckless misrepresentations) that include both damages and, under appropriate circumstances, rescission. . . . The minimum threshold for imposing tort liability under [] the Civil Code is whether the conduct alleged was harmful (i.e. wrongful or unreasonable) and caused injury to the plaintiff." ADIA Br., Dkt. No. 18, at 16.

10

not manifestly disregard the law when it heeded ADIA's own argument to apply ICDR Rule 28(1).

Heeding ADIA's argument, the tribunal undertook a searching inquiry to determine which substantive body of law was "appropriate" to apply, considering "the choice of law principles followed in New York, as well as choice of law authorities in international arbitration practice." Statement of Reasons, Toal Ex. M, at 3. It turned first to the "internationally recognized cumulative approach." It balanced "predictability and certainty in international commerce," "the practical utility of applying one law" to the entire dispute, "party autonomy" in selecting the body of law to apply, and "the need to respect" ADIA's motion to apply Abu Dhabi civil law. Id. It looked at treatises on international arbitration and reasoned that this approach pointed toward the application of New York law because of (1) the benefits of applying a "single legal regime" to the dispute, (2) the fact the transaction was denominated in U.S. dollars, and (3) the fact that performance of the contract took place in New York. Id.

The tribunal then turned to the New York framework, identified the proper interest analysis, and proceeded to balance the factors on each side to determine which jurisdiction had the greatest interest. Id. (citing Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998)). It recognized that ADIA was based in Abu Dhabi and that ADIA's alleged injury took place there. Nonetheless, it concluded that the "overwhelming center of events giving rise to the claims is New York." Statement of Reasons, Toal Ex. M, at 3. It found that the "substantial majority of the activities leading up to the signing of the Investment Agreement" were in New York; that the parties had each retained New York attorneys to draft the agreements and advise them; that many of the alleged misrepresentations were made in New York; and that New York had a significant

11

interest in regulating the conduct of New York-based financial institutions. Id. at 4. Rather than disregarding New York's interest analysis, the tribunal explicitly applied it.

ADIA now urges that this was an "erroneous application" of New York's interest analysis that warrants vacating the tribunal's award. ADIA Reply Br. at 10. Not only is this application not erroneous, but even if it were, it would not meet the standard for vacatur. See Eastern Associated Coal Corp., 531 U.S. at 62 (2000) (noting that a court cannot vacate an award even if the panel committed a serious error of law). In arguing that the tribunal erred as a matter of law, ADIA relies on statements by courts to the effect that when conflicting laws involve standards of conduct (as fraud and negligent misrepresentation do[9]), New York's interest analysis leads to the conclusion that the jurisdiction in which the loss occurred generally has the greatest interest. See, e.g., Sound Video Unlimited, Inc. v. Video Shack, Inc., 700 F. Supp. 127, 133-34 (S.D.N.Y. 1988).

ADIA's argued outcome—which it submits as a preordained result of New York's interest analysis—is not automatic. It gives way to the more multi-faceted interest analysis that the tribunal employed when the conduct that caused the injury took place in a jurisdiction apart from where the injury was felt. See Simon v. Philip Morris, 124 F. Supp. 2d 46, 57-58 (S.D.N.Y. 2000). The New York Court of Appeals has explicitly held that the New York interest analysis is not rigid, but rather is determined by "an evaluation of the facts or contacts which related to the purpose of the particular law in conflict." Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 521 (1994). This interest analysis is fact intensive and "flexible." Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72 (1993); see also White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284-285 (2d Cir. 2006) ("New York courts have adopted a flexible

---

[9] The New York interest analysis distinguishes between loss-allocation rules and conduct-regulating rules. Padula, 84 N.Y.2d at 521-22. Fraud and negligent misrepresentation are conduct-regulating rules. HSA Residential Mortg. Servs. v. Casuccio, 350 F. Supp. 2d 352, 364 (E.D.N.Y. 2003).

12

choice of law approach and seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute."). While the place where the injury was felt is an important factor, it is not conclusive. C.f. Cummins v. Suntrust Captial Mkts., Inc., 649 F. Supp. 2d 224, 237 (S.D.N.Y. 2009); see also Simon, 124 F. Supp. 2d at 58. Rather, the overriding principle that the law of the forum with the "greater interest in having its law applied in the litigation" governs the analysis.[10] Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521 (1994).

The nature of New York's flexible interest analysis, and the thoughtful way in which the tribunal applied it, are fatal to ADIA's argument that the tribunal acted in manifest disregard of the law. New York's interest analysis is subject to balancing and differing interpretations, and this Court cannot accept ADIA's invitation to reconsider the merits of its argument and reweigh the interests in its favor. See Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (courts are not authorized to review the merits of an arbitrator's decision, despite factual or legal errors). Given the flexibility of the analysis, it cannot be said that the law was improperly applied and or that its application led to an erroneous outcome, as the manifest disregard standard requires. The tribunal dutifully followed Article 28(1)—as urged by both parties—and determined that New York law was "appropriate."

ADIA urges that the Supreme Court's recent decision in Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp. compels vacating the award.[11] 130 S. Ct. 1758 (2010). In Stolt-Nielsen, the Supreme Court overturned an arbitration decision to allow class-wide arbitration because the

---

[10] As explained by the New York Court of Appeals, cases that focus on the location where the loss occurred only do so in order to protect the reasonable expectations of the parties who relied on the laws of that jurisdiction to regulate their conduct. See Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 198 (1985). As the tribunal properly recognized, "There is no indication in the materials we have reviewed, including the Investment Agreement's drafting history, that either Party ever considered the possibility that any law other than New York's should apply to their dealings." Statement of Reasons, Toal Ex. M at 5. Applying the civil law of Abu Dhabi would not have protected the reasonable expectations of the parties—it would have undermined them.

[11] At oral argument, ADIA referred to Stolt-Nielsen as a "landmark" decision and devoted much of its time to discussing it, (Tr. at 3), despite not citing it a single time in its opening brief.

13

panel's application of its own policy choice exceeded its delegated powers. The contract at issue there was silent on class-wide arbitration. The panel, instead of seeking to identify the proper rule of law governing that situation, "proceeded as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation," and failed to conduct a choice of law analysis. See Stolt-Nielsen, 130 S. Ct. at 1769.

The present action is readily distinguishable. The instant tribunal did not simply make up the law that it decided to apply, but it expressly conducted a choice of law analysis pursuant to the ICDR rules and the parties submissions. Rather than adducing what law ought to govern based on its own policy preference, the tribunal looked extensively at evidence of what law the parties intended would control. Statement of Reasons, Toal Ex. M, at 4-6; see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (in arbitrations, the parties "intentions control"). And as opposed to applying no law, the tribunal applied both choice of law principles derived from international arbitration and the New York interest analysis. In sum, this tribunal did the opposite of what prompted reversal in Stolt-Nielsen: it identified a rule of decision, and applied it.

### The Tribunal's Denial of Two of ADIA's Evidentiary Requests Did Not Violate the Convention or the FAA

The tribunal denied two of ADIA's nearly sixty document requests. ADIA claims that the denials violated the Convention because they left ADIA "unable to present [its] case," (Convention, Art. V(1)(b)), and that "refusing to hear evidence pertinent and material to the controversy" rendered the tribunal "guilty of misconduct," in violation of the FAA. 9 U.S.C. § 10(a)(3). In order to set the arbitral award aside under these standards, the denial of the document request must have amounted to a violation of due process or fundamental fairness.

Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997). "In making evidentiary determinations, an arbitrator 'need not follow all the niceties observed by the federal courts.'" Id. (quoting Bell Aerospace Co. Div. of Textron v. Local 516, 500 F.2d 921, 923 (2d Cir. 1974)). Review by this court is limited to determining whether the procedure used was fundamentally unfair. Tempo Shain, 120 F.3d at 20 (citing Teamsters, Local Union 657 v. Stanley Structures, Inc., 735 F.2d 903, 906 (5th Cir. 1984)).

Denial of ADIA's request for all documents related to Bowen's email, in which he references "significant but possibly unrecognized financial losses," did not render the proceedings fundamentally unfair. Bowen Email, Spray Ex. 14 at 1. The tribunal granted 56 of ADIA's 58 document requests, allowing ADIA access to over 550,000 pages of documents concerning Citi's expected capital needs. ADIA cross-examined several of Citi's top level officers regarding Citi's expected capital needs, including Vikram Pandit, its former Chief Executive Officer, Gary Crittenden, its former Chief Financial Officer, and Zion Shohet, its former Treasurer. All of these executives presumably knew much more about Citigroup's capital needs than Bowen, a lower level employee who worked in Citi's consumer lending group and had no idea whether Citi retained any exposure to the loans that he saw as problematic.[12]

Further, ADIA did not call Bowen as a witness, nor did it cross-examine any other witness about his email at the hearing. Although Bowen was on ADIA's initial witness list, it dropped him without explanation shortly before the hearing. ADIA did call Crittenden, a recipient of Bowen's email, but did not ask him a single question about it. Although ADIA now claims to not have had enough time at the hearing to "explore the issues raised by Mr. Bowen"

---

[12] In a recent decision dismissing, in part, securities claims against Citibank, Judge Stein failed to credit Bowen's warnings as raising a strong inference of scienter on the part of Citi executives, describing them as "lack[ing] specifics" and "vague in both their content and their timing." Int'l Fund Mgmt. S.A. v. Citigroup Inc., No. 09 Civ. 8755 et al, 2011 WL 4529640, at *10 (S.D.N.Y. Sept. 30, 2011).

(ADIA Br. at 22), it is undisputed that ADIA had over 23 remaining hours allotted to it at the time the hearing ended. Marks Email of May 31, 2011, Toal Ex. S at 2. ADIA had the opportunity to present evidence regarding Bowen's email, but made the strategic choice not to. Having had this opportunity and made this choice, it cannot complain that it was denied a fundamentally fair hearing.

Next, ADIA complains that the hearing was fundamentally unfair because the tribunal denied its request for Citi's Bank Examiner Reports. The tribunal ruled that ADIA's request for these reports was untimely, and even if it had been timely, the tribunal was disinclined to require their production given (1) the schedule of the arbitration, (2) "the extended scope of document production already mandated by the Tribunal," (3) the refusal of Citi's regulators to waive their privilege, and (4) the tribunal's judgment that they were not likely to produce information that was non-cumulative. November 7, 2010 Order, Toal Ex. C at 2-3.

Together, these reasons were more than sufficient to deny ADIA's request. Tribunals have "great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary proceedings." Supreme Oil Co., Inc. v. Abondolo, 568 F.Supp.2d 401, 408 (S.D.N.Y.2008). They are endowed with "discretion to admit or reject evidence and determine what materials may be cumulative or irrelevant." Fairchild Corp. v. Alcoa, Inc., 510 F.Supp.2d 280, 285 (S.D.N.Y.2007). Further, a tribunal's judgment with respect to privilege is a legal judgment, which is not reviewable by this Court for error—even if the error is serious. Eastern Associated Coal Corp., 531 U.S. at 62.

The tribunal allowed ADIA more than an adequate opportunity to present evidence to support its case. The tribunal allowed ADIA access to reams of internal documents regarding the valuation of Citi's structured securities and its capital needs. ADIA was permitted to cross-

16

examine Citi's top executives on all of these pertinent subjects. The tribunal listened to 24 witnesses over 16 days of testimony and accepted 5,988 exhibits relevant to these subjects. Denying ADIA's two individual requests did not render the tribunal guilty of misconduct or result in fundamental unfairness, as is required by the FAA and the Convention to set aside the award. ADIA cites no federal case—and this Court could find none—where a court vacated an arbitral award because the panel denied one party a document request.[13]

In sum, the denial of these two document requests did not render the proceedings fundamentally unfair. ADIA had expansive access to discovery materials, well in excess of the scope of discovery usually permitted in arbitration. ADIA cannot turn this discovery dispute into an issue of fundamental due process sufficient to set aside the award.

### The Tribunal's Award Must Be Confirmed

In addition to opposing ADIA's motion to vacate, Citi moved this Court to confirm the tribunal's award. Under the FAA, "a court must confirm an arbitration award unless it is vacated, modified or corrected as prescribed in §§ 10 and 11." Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co., 668 F.3d 60, 78 (2d Cir. 2012) (quoting Hall, 552 U.S. at 582) (internal citations omitted). For petitions also brought under the Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Because this Court

---

[13] The two cases that ADIA cites in support of its argument are unavailing. In Iran Aircraft Industries, the district court vacated the award because the tribunal essentially duped one of the parties into not presenting evidence that was crucial to its case, and then faulted that party for not presenting it, a condition not present here. See 980 F.2d 141, 146 (2d Cir. 1992). And in Tempo Shain, the Second Circuit vacated the award at issue because it found that the tribunal improperly prevented one party from calling a witness whose testimony would have been crucial and non-cumulative. Here, the tribunal never prevented ADIA from calling Bowen as a witness. Bowen's testimony and the bank examiner reports themselves would most likely have been cumulative and did not necessarily contain any information that ADIA could not, or did not, otherwise obtain from the 56 other document requests that the tribunal granted.

finds no reason to vacate or modify the award, Citi's Cross-Motion to Confirm the award must be granted.

## Conclusion

Petitioner ADIA's Motion to Vacate the arbitration award (Dkt. No. 17) is DENIED. Respondent Citi's Cross-Motion to Confirm the arbitration award (Dkt. No. 27) is GRANTED. The Clerk of the Court is directed to enter judgment on the award in Respondent's favor, and close this case.

Dated: New York, New York
      March 4, 2013

SO ORDERED:

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge